**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-19-0000220**
**10-MAR-2020**
**08:51 AM**

NO. CAAP-19-0000220

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
NICHOLAS MARTIN, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE THIRD CIRCUIT
(CASE NO. 3CPC-18-000055)

SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Fujise and Wadsworth, JJ.)

Defendant-Appellant Nicholas Martin (**Martin**) appeals
from the Second Amended Judgment of Conviction and Sentence
(**Judgment**), entered on February 19, 2019, in the Circuit Court of
the Third Circuit (**Circuit Court**). After Martin pleaded no
contest, the Circuit Court convicted him of: (1) Negligent Injury
in the First Degree, in violation of Hawaii Revised Statutes
(**HRS**) § 707-705(1);[1] and (2) Operating a Vehicle Under the
Influence of an Intoxicant, in violation of HRS § 291E-61(a)(1)

---

[1]        **Negligent injury in the first degree.** (1) A
    person commits the offense of negligent injury in the
    first degree if that person causes:

         (a)    Serious bodily injury to another person by the
                operation of a vehicle in a negligent manner; or

         (b)    Substantial bodily injury to a vulnerable user
                by the operation of a [vehicle] in a negligent
                manner.

HRS § 707-705(1) (2014).

and/or (3).[2] The Circuit Court subsequently ordered Martin to pay restitution to the injured complaining witness (**CW**) in the amount of $809,340.43 (**restitution amount**), pursuant to HRS § 706-646(2).[3]

On appeal, Martin contends that the Circuit Court erred in ordering the restitution amount by: (1) considering medical bills that the CW could not authenticate; (2) not applying the Hawaii Rules of Evidence (**HRE**) during a February 15, 2019 hearing on restitution (**Restitution Hearing**); and (3) failing to reduce the restitution amount by the amounts of certain medical bills (a) paid for by Martin's automobile insurance, and/or (b) stamped "no patient liability." Martin also argues that the restitution amount substantially exceeds the maximum legal penalty that may be imposed for his offenses.[4]

---

[2] **Operating a vehicle under the influence of an intoxicant.** (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

    (1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;

    . . . .

    (3) With .08 or more grams of alcohol per two hundred ten liters of breath[.]

§ 291E-61(a)(1) and/or (3) (2007 & Supp. 2016).

[3] **Victim restitution.** . . . .

    . . . .

    (2) The court shall order the defendant to make restitution for reasonable and verified losses suffered by the victim or victims as a result of the defendant's offense when requested by the victim. The court shall order restitution to be paid to the crime victim compensation commission if the victim has been given an award for compensation under chapter 351. If the court orders payment of a fine in addition to restitution or a compensation fee, or both, the payment of restitution and compensation fee shall be made pursuant to section 706-651.

HRS § 706-646(2) (Supp. 2016).

[4] Martin's points of error have been restyled and reordered for clarity.

2

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues raised and the arguments advanced by the parties, we affirm the Judgment for the reasons set forth below.

(1)  Martin contends that the Circuit Court erred in ordering restitution based in part on three medical bills that the CW "could not authenticate."  Relatedly, Martin argues that the Circuit Court erred in not applying the HRE during the Restitution Hearing.  Because the latter argument is foundational, we address it first.  We note, however, that on appeal, Martin has not identified any specific evidentiary error of the Circuit Court in receiving into evidence and considering any medical bill other than the three bills challenged for lack of proper authentication.  Any evidentiary issues with respect to the remaining bills are therefore deemed waived.  See Hawaii Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4), (7).

In general, the HRE do not apply to sentencing proceedings.[5/]  See HRE Rule 1101(d)(3) ("The rules . . . do not apply in . . . [m]iscellaneous [p]roceedings . . . [including] sentencing[.]")  The State was required to demonstrate by a preponderance of the evidence that the CW's losses were reasonable and verified and caused by Martin.  See HRS § 706-646(2); State v. DeMello, 130 Hawai'i 332, 343-44, 310 P.3d 1033, 1044-45 (App. 2013), vacated in part on other grounds, 136 Hawai'i 193, 361 P.3d 420 (2015).

Martin contends that the legislature did not intend for a restitution hearing to fall within the meaning of "sentencing proceedings" under HRE Rule 1101(d)(3).  We disagree.

Because restitution is part of a defendant's sentence, it follows that the trial court may order restitution as part of sentencing proceedings.  See State v. Kealoha, 142 Hawai'i 46, 60, 414 P.3d 98, 112 (2018) ("[w]hether imposed by free standing order, or as a condition of probation, restitution is part of the

---

[5/]    The general rule is subject to an exception, not applicable here, "when a defendant raises a proper good-faith challenge to a prior conviction used as a basis for the imposition or enhancement of a prison sentence."  See State v. Heggland, 118 Hawai'i 425, 443, 193 P.3d 341, 359 (2008).

<u>defendant's sentence</u> and judgment of conviction") (emphasis added); <u>State v. DeLima</u>, No. CAAP-17-0000914, 2019 WL 2265044, at *1-2 (Haw. App. May 28, 2019) (SDO) (stating that the HRE generally do not apply to sentencing proceedings, and concluding that the State presented sufficient evidence to support a restitution order).  Under HRE Rule 1101(d)(3), where the Circuit Court considers evidence regarding restitution as part of sentencing proceedings, the HRE generally do not apply.

Here, the Circuit Court initially considered restitution at Martin's September 5, 2018 sentencing hearing, but did not order restitution as part of the judgment that it entered at that hearing because of a pending civil case.  Thus, on November 30, 2018, the State filed a Motion to Correct Illegal Sentence, requesting that the judgment and sentence entered at the sentencing hearing be corrected to include restitution as required by HRS § 706-646(2).  Following the Restitution Hearing, the Circuit Court granted the motion and filed the Judgment, which amended the <u>sentence</u> and judgment from the sentencing hearing to reflect the order to pay restitution.  Because the Circuit Court considered evidence regarding restitution as part of sentencing proceedings, the HRE did not apply.

Nevertheless, Martin contends that the CW "could not authenticate" and "verify his loss as it pertains to" three medical bills which were received into evidence as State's Exhibits 1 through 3 during the Restitution Hearing.  More specifically, Martin argues that because the CW did not regain consciousness until a month after the incident, "he has no firsthand knowledge of receiving the medical services" during that time, and therefore "cannot testify and lay any foundation that he received the treatment" reflected in the three bills.

At the Restitution Hearing, CW testified that he was struck by a vehicle while out for a run on December 1, 2017, but has no memory of the incident.  He stated that his first memory after the incident was when he woke up at Queen's Medical Center about a month later, a few days before being discharged.  CW further testified that he had incurred medical expenses as a

result of the incident and had reviewed the bills sent to his attorney. During the Restitution Hearing, the Circuit Court received into evidence State's Exhibits 1 through 27, inclusive, which were medical statements and one insurance claim form reflecting total charges of $809,340.03, incurred from December 1, 2017 until August 2018. In his testimony, CW linked each of the bills to the treatment he received from the respective medical provider. Martin offered no evidence on any of these points.

State's Exhibit 1 is a four-page record that includes the State of Hawaii's "Itemized Statement" to "Patient" CW for a "Trip" to "Kona Hospital" on December 1, 2017, reflecting "Total Charges" and a "Balance Due" of $1,413.50. CW testified that the Hawai'i Fire Department transported him from the scene of the incident to Kona Community Hospital on the date reflected in the statement.

State's Exhibit 2 is a two-page statement from Kona Community Hospital for emergency services provided to CW on December 1, 2017, reflecting "Total Charges" and a "TOTAL BALANCE DUE" of $27,000.28. CW testified that while he "wasn't awake for it," he received treatment at Kona Community Hospital in "preparation for transport to Queen's [Medical Center]" in Honolulu. CW further testified that Exhibit 2 accurately reflected the treatment he received at Kona Community Hospital on December 1, 2017, "[t]o the best of [his] knowledge."

State's Exhibit 3 is a one-page "HEALTH INSURANCE CLAIM FORM" for services provided to CW by "HAWAII LIFE FLIGHT" on December 1, 2017, reflecting a "TOTAL CHARGE" of $68,773.59. CW testified that Exhibit 3 accurately depicted the charges for his "Medivac flight to Queen's [Medical Center]."

We conclude that the State presented sufficient evidence tying State's Exhibits 1-3 to Martin's offense. We also note that, even if the HRE applied to documentary evidence introduced at a restitution hearing, under HRE Rule 901(a), "[t]he requirement of authentication . . . is satisfied by evidence sufficient to support a finding that the matter in

question is what its proponent claims." In this context, the injured complaining witness who received medical bills for treatment from a medical provider may authenticate the bills. Cf. Joseph v. Liberty Mutual Group, Inc., No. 3:16CV-00642-JHM, 2018 WL 660636, at *1 (W.D. Ky. Feb. 1, 2018) (permitting injured plaintiff to authenticate medical records under identical Fed. R. Evid. 901(a): "Plaintiff may testify that he received medical treatment from a medical provider related to the injuries he allegedly sustained in the collision and he can submit the bill he received from that medical provider.")

(2) Martin contends that the Circuit Court erred in not reducing the restitution amount by the amounts of CW's medical bills: (a) paid by Martin's automobile insurance company; and/or (b) stamped "Partners Healthcare No Patient Liability." Regarding the stamped bills, Martin argued below that his "insurance paid it or the hospital made adjustment . . . ." The State, on the other hand, argues that Martin offered no evidence below that his insurance provider made payments toward the CW's medical expenses. The State further argues that reducing the restitution amount by payments made from collateral sources would violate this court's ruling in State v. Tuialii, 121 Hawaiʻi 135, 214 P.3d 1125 (App. 2009), overruled on other grounds by Kealoha, 142 Hawaiʻi 46, 414 P.3d 98.

In Tuialii, the defendant argued that ordering him to pay restitution to the victim of his theft was illegal, where the victim had received indemnification from its insurance company. This court rejected that argument based on its review and application of HRS §§ 706-605(7) and 706-646. We held, among other things, that: (1) HRS § 706-646 does not support the theory that a crime victim has not suffered a loss if (or to the extent that) the victim has received indemnification from its insurer; and (2) ordering a criminal defendant to repay the full amount of the losses caused by his or her crime furthers the rehabilitative purpose of HRS § 706-646 and properly compensates the victim for losses suffered as a result of the defendant's offense. Id. at 139-42, 214 P.3d at 1129-32. We further

concluded that a "criminal court need not sort out insurance indemnities, subrogation rights, and/or other potential civil law implications before ordering a thief or other criminal to repay his victim under the criminal restitution statute." Id. at 142, 214 P.3d at 1132.

This reasoning does not apply, however, to insurance payments made to the victim (or toward the victim's medical expenses) by the defendant's insurer. Construing a similar restitution statute, the California Court of Appeal in People v. Bernal, 123 Cal. Rptr. 2d 622, 630-31 (Cal. Ct. App. 2002), analyzed the distinction between reimbursement to the victim from third parties versus the defendant's insurer. Reimbursement from sources "completely distinct and independent from the defendants . . . were simply fortuitous events from which the defendants should not benefit . . . [and can be] subject to claims for reimbursement[,]" e.g., through subrogation rights; accordingly, "equitable principles would tend to place the loss on the wrongdoing defendant, preclude a windfall recovery by the victim, and reimburse the third party." Id. In contrast, when the defendant's "insurance company made payments to the victim on his behalf pursuant to its contractual obligation to do so, the carrier would have no recourse against [the defendant]," and if the defendant received "no credit for the defendant's insurance payment, the victim would receive a windfall to the extent that such payments duplicated items already reimbursed by [the defendant's] insurance carrier." Id. at 631. The court concluded that the relationship between the defendant and its insurer is such that payments by the insurer to the victim are from the defendant. Id. at 632.

We agree with this analysis and conclude that a trial court must offset against the defendant's restitution obligation monies paid to the victim (or toward the victim's medical expenses) by the defendant's insurance carrier for losses subject to the restitution order. Here, however, Martin's counsel argued during the Restitution Hearing that certain of the CW's medical expenses had been paid by Martin's insurance carrier, but

presented <u>no</u> <u>evidence</u> supporting that argument.  Once the CW made a prima facie showing of economic loss (<u>see</u> <u>supra</u>), the burden shifted to Martin to come forward with evidence supporting his challenge to the amounts requested.  <u>See</u> <u>DeMello</u>, 130 Hawaiʻi at 344, 310 P.3d at 1045.  Martin did not present any evidence to prove that his insurance provider made payments to the CW, or toward his medical expenses, in any amount.[6]

Accordingly, the Circuit Court did not err in not reducing the total restitution amount by amounts allegedly paid by Martin's automobile insurance company for CW's medical bills.

(3) Martin contends that the Circuit Court erred in ordering restitution in substantial excess of the maximum penalty under law for the offenses for which Martin was found guilty.  Citing <u>Timbs v. Indiana</u>, 139 S. Ct. 682 (2019), Martin argues that under the Eighth Amendment, the amount of his restitution cannot exceed the maximum amount of fines that can be imposed as punishment for his crimes.

Martin does not point to where in the record the asserted error was brought to the attention of the Circuit Court.  This point of error was therefore waived and will be disregarded.[7]  HRAP Rule 28(b)(4).  <u>See</u> <u>Molinar v. Schweizer</u>, 95 Hawaiʻi 331, 339, 22 P.3d 978, 986 (2001); <u>Kawamata Farms, Inc. v. United Agri Products</u>, 86 Hawaiʻi 214, 248-49, 948 P.2d 1055, 1089-90 (1997).

---

[6]    For example, twenty-one of the twenty-seven exhibits that were introduced at the Restitution Hearing are medical statements stamped "No Patient Liability," and appear to be from Partners HealthCare in Somerville, Massachusetts.  Each of the statements stamped "No Patient Liability" appears to reflect "[t]otal professional payments and adjustments" by MassHealth that equal the "[t]otal professional charges."  Some of the other statements from Partners HealthCare appear to reflect payments and adjustments by MassHealth in varying amounts that fall short of the total charges.  We note that MassHealth is the name of Massachusetts' Medicaid and Children's Health Insurance Program.  <u>See</u> www.mass.gov/orgs/masshealth.

[7]  The Supreme Court decided <u>Timbs</u> on February 20, 2019, one day after entry of the Judgment in this case.  Nevertheless, Martin could have argued in the Circuit Court that the restitution amount constituted an excessive fine under the Eighth Amendment in the same way that the defendant in <u>Timbs</u> did.  <u>See</u> <u>State v. Timbs</u>, 62 N.E.3d 472, 474 (Ind. App. 2016) ("[a]t the hearing, Timbs argued that forfeiture of his Land Rover . . . constituted an excessive fine"), <u>vacated</u>, 84 N.E.3d 1179 (Ind. 2017), <u>vacated and remanded</u>, 139 S. Ct. at 691.  Regardless, even after entry of the Judgment, Martin could have raised the Eighth Amendment issue in a motion to correct an illegal sentence, pursuant to HRPP Rule 35.  He failed to do so.

For these reasons, we affirm the Second Amended Judgment of Conviction and Sentence, entered on February 19, 2019, in the Circuit Court of the Third Circuit.

DATED:  Honolulu, Hawaiʻi, March 10, 2020.


On the briefs:

Brian J. DeLima and
Jeremy J.K. Butterfield,
for Defendant-Appellant.

Stephen L. Frye,
Deputy Prosecuting Attorney,
County of Hawaiʻi,
for Plaintiff-Appellee.

Chief Judge

Associate Judge

Associate Judge